624 N.W.2d 629 (2001)
261 Neb. 626
Donald E. BRUNKEN, Appellee,
v.
BOARD OF TRUSTEES OF CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM, Appellant.
No. S-00-017.
Supreme Court of Nebraska.
April 20, 2001.
*631 Jo A. Cavel, Assistant Omaha City Attorney, for appellant.
Joseph C. Byam, of Byam & Hoarty, Omaha, for appellee.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, Justice.

NATURE OF CASE
Donald E. Brunken requested a recalculation upward of his retirement pension, which the board of trustees of the City of Omaha Police and Fire Retirement System denied. In an order filed December 7, 1999, the district court for Douglas County vacated and set aside the board of trustees' decision and ordered the recalculation upward. The board of trustees appeals. For the reasons stated below, we reverse the district court's order and remand the cause with directions to reinstate the board of trustees' decision.

STATEMENT OF FACTS
There is no dispute in this appeal that the board of trustees acted within its jurisdiction nor is there any dispute as to the relevant facts. Brunken was employed by the city of Omaha as a firefighter for 30 years. During the last 5 ½ years of his employment, he held the position of fire chief. On December 31, 1995, Brunken retired as a firefighter with the city.
When Brunken retired, he was awarded a "monthly service retirement pension payable each month" from the city, which was calculated pursuant to Omaha Mun. Code, ch. 22, art. Ill, § 22-76 (1996). Under § 22-76, participants in the city's retirement system "shall be entitled, upon such member's retirement, to a monthly service retirement pension payable each month for the remainder of such member's natural life after retirement equal to [a certain percentage] of the member's highest average monthly compensation" during any year of the member's last 5 years of service.
When Brunken retired, the city determined that his "highest average monthly compensation" was received during the calendar year 1995, the last year of his employment with the city. In 1995, Brunken's salary with the city was $94,278.31, which equaled $3,626.09 biweekly, or $7,856.53 monthly. Pursuant to § 22-76, the city calculated Brunken's monthly retirement pension to be 55 percent of the monthly compensation he received in 1995, or $4,321.09 per month. Later, this figure was adjusted upward by 2 cents, for reasons that are unexplained in the record.
Brunken contacted the city and requested a recalculation upward of his pension benefits. Brunken claimed that because his total taxable compensation for the year 1995 included a lump-sum payment of $7,117.38 for retroactive wages for 1994 received on November 4, 1995, as a *632 result of contract negotiations, the city should have calculated his retirement pension based on his 1995 total compensation of $101,395.69 rather than $94,278.31. Brunken claimed he was entitled to an annual pension equal to 55 percent of $101,395.69, or $4,647.30 per month, a net increase of more than $300 per month over the pension Brunken had been awarded.
It is undisputed that although received on November 4, 1995, the lump-sum payment of $7,117.38 constituted "backpay" for work performed by Brunken in 1994. Pursuant to the rules of the Internal Revenue Service (IRS), the city had included this lump-sum amount in Brunken's 1995 W-2 statement. However, the city did not include the lump-sum amount in its calculations of Brunken's "highest average monthly compensation" pursuant to § 22-76.
On April 15, 1999, Brunken appeared before the board of trustees, requesting a recalculation upward of his pension benefits for the above-stated reasons. At this hearing, 15 exhibits were received into evidence by the board of trustees, including: the municipal ordinance provisions; an employer's tax guide prepared by the IRS (Publication 15-A, Employer's Supplemental Tax Guide, Supplement to Circular E), providing that the employer "[t]reat back pay as wages in the year paid"; and a copy of a May 12, 1992, interoffice memorandum from the city's law department written by the deputy city attorney to the city finance director, regarding the treatment to be accorded backpay in connection with the calculation of pension benefits. The memorandum stated, inter alia, that in calculating retirement pensions for the Police and Fire Retirement System, the "consistent approach [of the city] with respect to members of all Pension Systems has been that retroactive wage adjustments are allocated to the times that they would have been earned," and "it is apparent that employment has neither been accepted nor continued in reliance upon the fact that a lump-sum payment of retroactive wages will be included in one's pension computation as though that total sum were received at the time of payment."
Brunken appeared before the board of trustees and admitted that the $7,117.38 received on November 4, 1995, was for "backpay" for 1994. Brunken did not claim at the hearing that he had been assured of or had otherwise relied on any representation that such "backpay" would be included in calculating his pension benefits. At the conclusion of the hearing, the board of trustees voted unanimously to deny Brunken's request to recalculate his pension benefits.
On May 4, 1999, Brunken filed a petition in error, appealing the board of trustees' decision to the district court for Douglas County. A hearing on Brunken's appeal was held on June 4, at which time the district court received into evidence the transcript and the exhibits from the April 15 hearing before the board of trustees.
In an order filed December 7, 1999, the district court noted that it was undisputed that Brunken had received $7,117.38 on November 4, 1995, as "backpay" for 1994 and that his total compensation for 1995 including the $7,117.38 was $101,395.69. The district court concluded that the word "compensation" as used in § 22-76 was "not embellished, limited, or modified" and that therefore, the compensation which the city should have used as a basis for its pension benefit calculation was Brunken's total 1995 compensation of $101,395.69. The district court vacated the board of trustees' decision and remanded the matter to the board of trustees for a recalculation of Brunken's pension benefits, which recalculation would add the $7,117.38 lump-sum payment for 1994 wages received in 1995.
The board of trustees appeals from the district court's December 7, 1999, order.

ASSIGNMENT OF ERROR
The board of trustees assigns three errors, which we restate as one. The board *633 of trustees claims the district court erred in vacating the board of trustees' decision denying Brunken's request to recalculate his pension upward.

STANDARDS OF REVIEW
In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision of the administrative agency to determine whether the agency acted within its jurisdiction and whether the decision of the agency is supported by sufficient relevant evidence. Cox v. Civil Serv. Comm. of Douglas Cty., 259 Neb. 1013, 614 N.W.2d 273 (2000). The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. Id.
Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. Tilt-Up Concrete v. Star/City Federal, 261 Neb. 64, 621 N.W.2d 502 (2001).

ANALYSIS
This case presents a question of interpretation of § 22-76 of the Omaha Municipal Code. We have previously stated that when
analyzing the Omaha Municipal Code, a legislative enactment, we follow the same rules as those of statutory analysis....
First, we look to the plain language of the code. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
Nelson v. City of Omaha, 256 Neb. 303, 310, 589 N.W.2d 522, 527 (1999). See, also, Moulton v. Board of Zoning Appeals, 251 Neb. 95, 103, 555 N.W.2d 39, 45 (1996) ("[t]his court will give the language of a city ordinance its plain and ordinary meaning"). As this case presents a question of statutory interpretation, we have an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. Tilt-Up Concrete v. Star/City Federal, supra.
At issue generally in this case is whether under § 22-76 of the Omaha Municipal Code the lump-sum payment for 1994 wages that Brunken received in 1995 should be included in the calculation of Brunken's retirement pension. Specifically, this case presents the question of statutory interpretation of whether the 1994 backpay of $7,117.38 received by Brunken on November 4, 1995, was "monthly compensation" under § 22-76 which should be included when calculating Brunken's "highest average monthly compensation," for retirement pension purposes. Based on the plain language of § 22-76, we conclude as a matter of law that the 1994 backpay of $7,117.38 was not "monthly compensation" includable in the pension calculation under § 22-76 and that the district court erred in concluding otherwise.
The board of trustees claims that the district court erred in vacating its decision and in directing the board of trustees to recalculate Brunken's pension benefits to include the $7,117.38 for 1994 backpay as 1995 monthly compensation. In support of its appeal, the board of trustees contends that (1) placing a sensible construction on § 22-76, backpay for the year 1994 should not be considered as 1995 "monthly compensation" in calculating Brunken's pension benefit; (2) the past practice of the city as evidenced by the 1992 interoffice memorandum was to allocate "backpay" to the time period in which it was earned for pension calculation purposes; and (3) there was relevant evidence to support the decision of the board of trustees rejecting Brunken's request for a recalculation of pension benefits upward.
*634 In response, Brunken contends that (1) because the city included the lump-sum payment in his 1995 calculation for income tax purposes, the board of trustees was also required to include the lump-sum payment in its calculations for pension benefit purposes and (2) this court's opinion in Halpin v. Nebraska State Patrolmen's Retirement System, 211 Neb. 892, 320 N.W.2d 910 (1982), requires that we affirm the order of the district court. We reject Brunken's arguments, and we agree with the board of trustees that the district court erred in vacating the decision of the board of trustees.
With respect to the proper interpretation of § 22-76, we note that the determination of Brunken's pension benefits is derived from a calculation based on the language "highest average monthly compensation" found in § 22-76. The district court concluded that the word "compensation" as used in § 22-76 was "not embellished, limited or modified" and, therefore, determined that "compensation" as used in § 22-76 should include all compensation which Brunken received in 1995, his last and highest paid year of employment. Because the plain language of § 22-76 requires that the compensation used as a basis for calculating pension benefits be "monthly compensation," the district court erred as a matter of law in concluding that "compensation" as used in § 22-76 was not "embellished, limited, or modified" and directing the board of trustees to recalculate Brunken's pension benefits using the total amount Brunken had received in 1995.
Contrary to the district court's conclusion that "compensation" is "not embellished, limited or modified," the word "compensation" found in § 22-76 which is to be used to determine pension benefits is in fact limited to compensation received "monthly." The term "monthly" is defined as "of or relating to a month ... payable [or] reckoned by the month ... occurring, appearing, or being made every month." Webster's Third New International Dictionary, Unabridged 1466 (1993). In addition, we note that elsewhere in § 22-76, the ordinance provides that participants in the city's retirement system will receive "a monthly ... pension payable each month" indicating that the word "monthly" as used in § 22-76 is understood to mean "payable each month."
In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. Nelson v. City of Omaha, 256 Neb. 303, 589 N.W.2d 522 (1999). Further, an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Id. The plain and ordinary meaning of the expression "monthly compensation" as used in § 22-76 is that amount of income received regularly by the retiring employee every month. We agree with the board of trustees that the "happenstance" receipt of the $7,117.38, for 1994 backpay, in November 1995 did not alter Brunken's regular "monthly compensation" during 1995 and that if the backpay amount was included in Brunken's pension benefit calculation, it would artificially inflate his pension benefits. Because the plain and ordinary meaning of "monthly compensation" in § 22-76 is limited to regular compensation received every month, the district court erred as a matter of law in directing inclusion of the lump-sum backpay amount in the determination of Brunken's pension benefits.
Notwithstanding the plain meaning of "monthly compensation" found in § 22-76, which we have concluded requires reversal of the district court's order, Brunken nevertheless contends that because the lump-sum payment was included in his 1995 wage calculation for income tax purposes, the board of trustees is required to include the lump-sum payment in its calculation for pension benefit purposes. Other than his profered interpretation, Brunken has presented no argument or evidence to support his contention that when the city enacted the provisions of the municipal code regarding police and fire *635 department retirement pensions, it intended to incorporate IRS rules or regulations regarding income tax as part of the municipal code pertaining to pension benefit calculation. We have previously indicated that in the absence of evidence, a court will refuse to "read a meaning into the ordinance which the plain words do not provide." Garza v. City of Omaha, 215 Neb. 714, 716-17, 340 N.W.2d 409, 411 (1983). There is no evidence in the record on appeal that the city intended to give anything other than a plain and ordinary meaning to the words "highest average monthly compensation," and thus, we decline Brunken's invitation to look to IRS publications, rules, or regulations as binding on the manner in which to calculate pension benefits in § 22-76 of the Omaha Municipal Code.
Finally, Brunken urges us to affirm the district court's decision on the authority of Halpin v. Nebraska State Patrolmen's Retirement System, 211 Neb. 892, 320 N.W.2d 910 (1982). Brunken's reliance on Halpin is misplaced. In Halpin, a retired member of the state highway patrol system brought an action seeking a declaratory judgment that the calculation of state highway patrol officers' retirement benefits based on the income from the final 3 years of service should continue to include lump-sum payments of unused vacation and sick leave that were paid to patrol officers upon retirement as had been the method of calculation prior to 1979. The record in Halpin demonstrated that prior to 1979, highway patrol officers had been specifically told as an incentive to join and remain with the patrol that lump-sum payments of unused vacation and sick leave would be included in their pension benefit calculations and that such lump-sum payments had in fact been so included in the pension benefit calculations. The record also contained evidence that the highway patrol used the inclusion of such unused benefits as a way of discouraging the abuse of the sick leave policy.
Based upon the record therein, we held in Halpin that in calculating the state highway patrol officers' retirement benefits, such lump-sum payments of unused vacation and sick leave should be included in the year they were paid. We noted that the evidence clearly demonstrated in Halpin that highway patrol officers had been promised that the calculation of their retirement benefits would include the lump-sum payment of unused leave, and such a promise constituted a contractual right which was protected from unconstitutional impairment by the board of trustees for the highway patrol retirement system.
The Halpin case is distinguishable from the case on appeal. In addition to differing code language, the record in the instant appeal contains no evidence that any promises or statements were made to Brunken or any member of the city's fire department that for purposes of calculating pension benefits, retroactive lump-sum backpay awards would be included as monthly compensation in the year such lump-sum awards were eventually paid. Brunken has not alleged or demonstrated a denial of any promise or contractual right or a change in practice. On the contrary, the city law department's May 12, 1992, interoffice memorandum makes it clear that unlike Halpin, the practice was to allocate the backpay to the years in which the sums were earned, not paid, for pension calculation purposes.
As noted above, the May 12, 1992, memorandum by the deputy city attorney to the city's finance director was received as evidence at Brunken's hearing before the board of trustees. In the memorandum, the deputy city attorney responded to a specific question as to whether the entirety of a retroactive pay adjustment for payroll years 1991 and 1992 which would be received by Omaha police officers in a lump sum in 1992, should be included exclusively in 1992 compensation for the purpose of pension benefit computations, or, instead, allocated to the years in which the wages were actually earned.
*636 The memorandum distinguished the facts in Halpin v. Nebraska State Patrolmen's Retirement System, 211 Neb. 892, 320 N.W.2d 910 (1982), from those relating to the retroactive pay adjustment at issue in the memorandum. The memorandum addressed the city's past practice concerning lump-sum payments of retroactive pay adjustments and indicated that for purposes of computing pension benefits, the city had historically attributed the pay adjustment to the years during which the work had been performed as distinguished from the year in which the adjustment was received. The memorandum advised the city to continue this practice.
While the city's interpretation is not binding on this court, we have previously recognized in a case involving the interpretation of the pension provisions of a city charter that "`"[l]ong-continued practical construction of a statute by the officers charged by law with its enforcement is entitled to considerable weight in interpreting that law." ...'" Belitz v. City of Omaha, 172 Neb. 36, 45, 108 N.W.2d 421, 427 (1961), quoting Flint v. Mitchell, 148 Neb. 244, 26 N.W.2d 816 (1947). Accord Rohrer v. Hastings Brewing Co., 83 Neb. 111, 119 N.W. 27 (1908). Thus, we conclude that Halpin is distinguishable from the instant case, and we further find support for our interpretation of § 22-76 in the city's prior established interpretation and handling of backpay awards in connection with pension benefit calculations.

CONCLUSION
Based upon a "plain and ordinary" construction of § 22-76, we conclude that the district court erred as a matter of law in vacating the board of trustees' decision. The board of trustees was correct that the lump-sum backpay received by Brunken in 1995 was the retroactive payment of wages earned in 1994 and should not be included in the board of trustees' computation of Brunken's "highest average monthly compensation" during 1995 for purposes of computing Brunken's pension benefits. There was sufficient relevant evidence to support the board of trustees' decision. Accordingly, we reverse the order of the district court vacating the board of trustees' decision, and we remand the cause with instructions to the district court to reinstate the decision of the board of trustees which denied Brunken's request for a recalculation upward of his retirement pension.
REVERSED AND REMANDED WITH DIRECTIONS.